BROTHERHOOD OF RAILROAD TRAINMEN, a voluntary unincorporated labor organization, Plaintiff,

v.

MISSOURI PACIFIC RAILROAD COMPANY, a corporation, Natchez & Southern Railway Company, a corporation, and the Texas and Pacific Railway Company, a corporation, Defendants.

No. 64 C 190(2).

United States District Court
E. D. Missouri, E. D.
May 28, 1964.

John E. Bardgett and John H. Haley, Jr., St. Louis, Mo., for plaintiff.

M. M. Hennelly and R. W. Yost, St. Louis, Mo., for defendants.

MEREDITH, District Judge.

This matter is before the Court on cross-motions for summary judgment and on defendants' motion to dismiss plaintiff's complaint seeking declaratory and injunctive relief for which a temporary restraining order was issued on May 11, 1964, and by agreement of the parties extended to May 29, 1964. There are no material facts in dispute so far as necessary to our disposition of this case. The following embraces our findings of fact and conclusions of law.

The immediate history of the present proceeding commences with the award of Arbitration Board No. 282, which was established by Joint Resolution of Congress, Public Law No. 88–108, approved August 28, 1963 (see pocketpart 45 U.S.C.A. § 157), to provide for the compulsory arbitration of the long-existing nationwide dispute between the railroads and the labor organizations. For clarity and convenience the specific award of Arbitration Board No. 282, which was filed with the United States District Court for the District of Columbia on November 26, 1963, will hereafter be referred to as Award 282. On December 6, 1963, a petition to impeach Award 282 was filed there. On January 8, 1964, the said district court rendered an opinion upholding the validity of the award in every respect and entered its judgment on January 10th dismissing the petitions for impeachment. Brotherhood of Locomotive Firemen & Enginemen v. Chicago, B. & Q. R. Co., D.C., 225 F.Supp. 11. Judgment was entered February 28, 1964, in the District Court of the District of Columbia on the mandate of the Court of Appeals of the District of Columbia, such court having affirmed the decision of the District Court on February 20, 1964, D.C.Cir., 331 F.2d 1020. Certiorari was denied on April 27, 1964, by the United States Supreme Court, 84 S.Ct. 1181.

The two principal issues determined by Award 282 involved the firemen and the crew consists. We are not here concerned with the firemen dispute. The portion of Award 282 with which we are primarily concerned is its provision for local special boards of adjustment for adjudicating disputes as to proposed changes of crew consists. It provided methods by which jobs might be eliminated while at the same time protected employees, as of the effective date of the award, so that they retained their employment and could not be separated from employment by the potential reduction of jobs in crew consist changes, but only by retirement, discharge for cause or by natural attrition.

Four awards have been made by special boards of adjustment. Plaintiff seeks an adjudication that these four awards are null and void. The facts with respect to each of these awards are substantially the same and their immaterial differences do not dictate contrary conclusions. Hence, we will recite the facts as to only one award, but our conclusions will be applicable to all four.

On January 25, 1964, the defendants herein, relying on Section A–3 of Article III of the 282 Award served notices specifying certain proposed changes by their respective carriers in the number

of train service employees to be used in certain classes of service. The notices suggested a time and place for a conference to discuss the proposed changes. Plaintiff declined to participate by letters dated February 3rd and 4th, stating that the notices were illegal and improper because Award 282 in their view, had not become effective. On February 14, 1964, the defendants herein advised the plaintiff of their intention to submit the dispute to Special Boards of Adjustment to be established in accordance with Section III, Part B of Award 282. The plaintiff, in response, reiterated its previous position to the effect that the convening of a Special Board of Adjustment was unauthorized and premature and declined to participate in the formation of a Special Board.

Following the decision on February 20, 1964, of the United States Court of Appeals for the District of Columbia, affirming the decision of the district court, which had upheld Award 282, telegrams were sent by the defendants to the plaintiff on February 27, 1964, offering to withhold their requests to National Mediation Board, provided by Award 282's Article III, Part B, Paragraph B(2) (b), for the appointment of members of the Special Boards of Adjustment. On the following day, February 28, the date of entry by the District Court of the District of Columbia of final judgment on the mandate of the Court of Appeals, plaintiff advised that it would not participate in any way in proceedings under Award 282 since in its view that Award was not enforceable without the entry of final judgment. On February 29, 1964, defendants, acting under Article III, Part B, Paragraph B(2) (b), of Award 282, requested the National Mediation Board to appoint an employee member and a neutral member of Special Boards of Adjustment for the properties involved. On March 5 and 6, 1964, plaintiff advised defendants that, without waiving its previous position of the prematurity and illegality of the notices, plaintiff was willing to meet and negotiate if defendants would advise which specific job assignments they desired to discuss. In reply thereto, defendants stated they were willing to negotiate, but were not willing to delay any further the convening of the Board.

On March 9, 1964, the National Mediation Board appointed David R. Douglas of Oklahoma City as the neutral member in each case. The National Mediation Board also appointed A. F. Smith, General Chairman of the plaintiff Brotherhood, as the employee member of three Special Boards of Adjustment, and appointed J. L. Purdum, General Chairman of the plaintiff Brotherhood, as the employee member of the fourth Special Board of Adjustment. Defendants had previously named their respective representatives to the Special Boards. Subsequently, Mr. Douglas refused his appointment as neutral member of the Special Boards and on March 24, 1964, the National Mediation Board appointed Dudley Whiting of Detroit, Michigan, as the neutral member of the Special Boards. Mr. Whiting scheduled the first meetings of these Special Boards of Adjustment for March 31, 1964. Representatives of the defendants and of the plaintiff appeared at this meeting and the plaintiff's representative contended formally that the Local Board had been established prematurely since no negotiations had been conducted applying the guidelines of Award 282 and because defendants' notices were on a systemwide basis, and should be recessed indefinitely. On the following day the Local Board denied the request for a recess. Thereupon, the plaintiff's representative advised that it would not participate further in the hearing. The hearing was continued in the absence of the organization representative and evidence was submitted on behalf of the carrier and the award, concurred in by the neutral and the carrier members, was entered by the Local Board on May 6, 1964. This will hereafter be referred to as the Local Award.

Defendants notified plaintiff that they would put into effect at 12:01 p. m., on

May 11, 1964, each of the Local Awards. On that date plaintiff sought and this Court granted, on the plaintiff's posting of a $50,000 bond, an order temporarily restraining defendants from putting these Local Awards into effect. A hearing was held for a preliminary injunction on May 20, 1964, but by agreement of the parties and with approval of the Court, the temporary restraining order having been continued in effect until May 29, 1964, it is unnecessary to consider the issuance of a preliminary injunction since our views of the issues raised permit disposition of the case prior to expiration of the temporary restraining order.

The complaint seeks a declaration that the local awards are null and void and that defendants be enjoined permanently from putting them into effect because of the following facts. The first five of which have been established:

1. The Local Board did not take all testimony before it under oath and transmit it together with the original of its Award to a United States District Court or the Interstate Commerce Commission.

2. The Local Board did not provide for the effective date of its Local Award or fix the period that it should continue in force.

3. Defendants call for negotiations and convening of the Local Boards occurred on January 25, 1964.

4. The parties did not negotiate prior to the convening of the Local Boards.

5. Defendants' notices of proposed changes were, in part, on a systemwide basis.

6. Plaintiff also alleges that the Local Award was permeated with fraud and corruption because the Local Board failed to apply the guidelines of Award 282 and because the "neutral" member was prejudiced against plaintiff and capitulated to the desires of defendant. This has not been established as a fact, but it is immaterial to our decision.

Plaintiff concludes from the foregoing: that the Local Awards wholly fail to comply in procedure and in substance with 45 U.S.C.A. §§ 157, 158 and 159, and, therefore, are unlawful under Public Law 88–108 which embraces the aforementioned three sections of the Railway Labor Act; Local Awards deprive them of appellate and review rights envisioned by Public Law 88–108, denying them procedural and substantive due process of law and equal protection of the laws; that should it be held that Award 282 withheld the benefits of 45 U.S.C.A. §§ 157, 158 and 159 insofar as Local Boards and awards are concerned, then Board 282 exceeded the powers given it by Public Law 88–108 in violation of Article I and Amendments 5 and 14 of the United States Constitution; that should it be held that Public Law 88–108 authorized Board 282 to deny plaintiff the benefits of 45 U.S.C.A. §§ 157, 158 and 159 by permitting a local board to finally determine the dispute, then Congress unlawfully and unconstitutionally delegated its authority to legislate and exceeded its authority in denying plaintiff rights of judicial review and due process and equal protection of the laws.

Primarily we must determine our authority to grant the relief sought. Jurisdiction is alleged to be present under 28 U.S.C.A. § 1337, because the action arises under Public Law 88–108 and 45 U.S.C.A. §§ 157, 158 and 159.

Finality in the limited two-year period of settlement of this long-smouldering railroad dispute, which began in 1959, was contemplated by Public Law 88–108. To that end, Section 3 provided that the award which we have referred to as Award 282 "shall be binding on both the carrier and organization parties to the dispute and shall constitute a complete and final disposition of the aforesaid issues covered by the decision of the board of arbitration". Whether Award 282 conforms to Public Law 88–108 is not a question for our determination for that enactment expressly gave such limited authority as was given to the District Court of the District of Columbia:

Public Law No. 88–108 provided in Section 4:

"To the extent not inconsistent with this joint resolution the arbitration shall be conducted pursuant to sections 7 and 8 of the Railway Labor Act, * * * the board's award shall be made and filed as provided in said sections and shall be subject to section 9 of said Act. * * * The United States District Court for the District of Columbia is hereby designated as the court in which the award is to be filed and the arbitration board shall report to the National Mediation Board in the same manner as arbitration boards functioning pursuant to the Railway Labor Act. * * * The award shall continue in force for such period as the arbitration board shall determine in its award, but not to exceed two years from the date the award takes effect, unless the parties agree otherwise."

From this language we conclude that we are without authority to determine any issue involving the validity of Award 282. Furthermore, the question is not an open one because the only forum with authority to determine that issue has determined it adversely to plaintiff's contention: Brotherhood of Locomotive Firemen & Enginemen v. Chicago, B. & Q. R. Co., supra, 225 F. Supp. 1. c. 20:

"Counsel for the plaintiffs further urge that the board failed to comply with the requirement of Section 3, that the award should constitute a complete and final disposition of the issues covered by its decision. They point to the fact that the board provided that numerous individual disputes concerning the sizes of train crews should be referred from time to time to local boards and they argue that such a provision constituted a failure on the part of the board to make a complete and final disposition of the issues. This contention is entirely lacking in merit. What the board did was to bar any changes for the time being and to prescribe a definite formula and a group of concrete principles to govern the determination of numerous disputes that were bound to arise in the future as to the composition of train crews on individual trains. Conceivably, there could be thousands of such disputes from time to time. It then constructed machinery for the disposition of these matters. These provisions must be deemed in essence to constitute a complete and final disposition of the issues. The situation is analogous to that of an interlocutory judgment determining issues framed by the pleadings or by a pre-trial order, followed by a reference to a special master to state an account or assess damages on the basis prescribed by the court.

" * * * This decision must be deemed a final disposition and solution of this problem."

Thus, there has been judicial affirmation that Award 282 is final and binding and valid, even though therein likening it to an interlocutory decree, and so for our purposes the authority of the Local Board, its procedure, its findings and award, stemming as they do from Award 282 must be deemed to be a part of and embraced by Award 282, subject for its interpretation and application by reference to Board 282 as provided for by 45 U.S.C.A. §§ 157(c), 158(m); such additional interpretations and applications of its award by Board 282 being judicially reviewable by 45 U.S.C.A. § 159 in the District Court of the District of Columbia under Public Law 88–108.

As a matter of fact, plaintiff here and others have sought and obtained a reconvening of Board 282 for the purposes of interpreting and applying provisions of Award 282 as it relates to local awards. The affidavit of B. W. Smith attaches the May 17, 1964, interpretations and applications of Board 282 concerning the following questions: the effective date of Award 282; the necessity of prior negotiations before com-

mencing proceedings by local boards; and the specificity required in the notices proposing changes. Under 45 U.S.C.A. § 158(m) these interpretations and applications will have the same force and effect as the original award when filed in the District Court of the District of Columbia. Whether the notices herein given were in accord with Award 282 are for Board 282's interpretation.

██ Whether a Local Board is required to take testimony under oath and transmit it with its award to a district court and the Interstate Commerce Commission must be determined by Board 282 because Award 282 has been declared final and thus the question becomes one of interpreting and applying Award 282. The same may be said as to whether the Local Board was required to fix an effective date of its local award. Ultimately, it will be for the District Court of the District of Columbia to determine whether Board 282's interpretations and applications measure up to the yardstick in Public Law 88–108 that "to the extent not inconsistent with this joint resolution the arbitration shall be conducted pursuant to sections 7 and 8 of the Railway Labor Act, * * * the board's award shall be made and filed as provided in said sections and shall be subject to section 9 of said Act * * *." The local boards derive their sole authority from Award 282 and their responsibilities are determined entirely by Award 282.

██ Insofar as our authority to proceed herein is concerned, we have determined that the Local Award has become merged in Award 282. It, therefore, follows that the forum for determining the merits of the allegation that the Local Board was permeated with fraud and corruption is either in the District Court of the District of Columbia directly or ultimately by seeking in Board 282 an interpretation as to whether that Award contemplates the filing of the local awards with Board 282 before the local awards become operative and adopted as a part of Award 282 and thereby subject to impeachment proceedings.

██ Our analysis of plaintiff's grounds, heretofore outlined, for holding void the local awards has convinced us that the function plaintiff would have us perform is that of interpreting and applying Award 282 or of passing upon the validity of Award 282. We are not authorized by virtue of Public Law 88–108 to perform those functions. That Act gave such authority to interpret and apply its award to the Board it created, Arbitration Board 282, and made the District Court of the District of Columbia the forum for impeaching it. Unless Arbitration Board 282 interprets and applies its own Award, deemed final on review by the forum designated for impeachment, we would have as many interpretations of that Award as there are district courts in the country, wending their way through Courts of Appeals to ultimate harmonious resolution in the Supreme Court of the United States. Such a procedure is not dictated by the language of Public Law 88–108 nor does it comport with reason in considering the finality contemplated by Public Law 88–108 in providing for an ultimate settlement for a limited period of time of a dispute which threatened the nation.

The ultimate thrust of plaintiff's complaint goes to the fairness of permitting the award to take effect prior to court approval. Plaintiff points to the fact that these local awards were germinated by defendants' notices of proposed changes on January 25, 1964, a date prior in time to the entry of final judgment upholding the validity of Award 282 in the District Court of the District of Columbia. Plaintiff reasons that until judicial review of Award 282 had been obtained, there was no authority under Public Law 88–108 to commence the subsidiary proceedings embraced in Award 282 and if the resultant local awards are permitted to take effect before judicial review, there has been and will be a denial of due process and equal protection. Plaintiff assumes there will be no judicial review of these local awards.

■ It is true, of course, that Public Law 88–108 makes provision for limited judicial review of Award 282. But the effective date of that award is not therein made dependent or contingent upon the date judicial review is completed. It is only provided in Section 5 that " * * * said award shall not become effective until sixty days after the filing (in the District Court of the District of Columbia) of the award." 45 U.S. C.A. § 158(j) provides, as applicable here, that Board 282 "[s]hall provide for the date from which the award shall become effective * * *." Board 282 in its interpretation and application of its award on May 17, 1964, has stated the effective date to be January 25, 1964. The fact that judicial review has been and will be subsequent to the effective date of the award does not spell lack of due process under the critical emergency circumstances facing the country when Congress enacted Public Law 88–108. Finality was the keynote to the drastic measure taken by Congress. Since the award of Board 282 lasts only for two years from its effective date, and has been declared final, it is inconceivable that disputes arising throughout the United States could be further litigated in all the district courts in the various sections of the country before changes, determined by Local Boards after hearings of which the parties had notice and an opportunity to be heard, could be put into effect.

It may be well to note in this connection that Award 282 provides thorough protection to employees represented by plaintiff insofar as it pertains to their rights in retaining employment, notwithstanding reduction of jobs. In balancing the injury that would thus appear to be suffered by plaintiff in refusing to enjoin defendants from putting the local awards into effect prior to judicial review as against the injury suffered by defendants if they are required to hold the awards in abeyance pending such outcome, the scales tip decidedly in favor of defendants.

For example, defendant Missouri Pacific testified in considering the motion for preliminary injunction that its savings by attrition would amount to $918,452 for the first year beginning May 11, 1964, and $1,697,000 for the second year, plus additional savings as a result of hiring extra men who would not be required if the changes were put into effect. Defendant Texas and Pacific Railway Company testified its savings by attrition for the first year would be $390,887 and $721,476 for the second year, plus additional savings as a result of hiring extra men.

If, upon judicial review in the proper forum, the issues herein involved are determined adversely to defendants, none of the employees represented by plaintiff who were employed on the effective date of the Award will have lost their positions nor will it be impossible or even difficult to put the plaintiff organization in the same position it enjoyed prior to the effective date of Award 282.

■ Plaintiff also urges that since Award 282 did not become effective as to firemen until denial of certiorari by the Supreme Court of the appellate affirmance of the District Court of the District of Columbia's decision upholding the validity of the award, an earlier effective date of the award as applied to plaintiff denies to them equal protection of the law. Plaintiff's contention in this regard is without merit because the firemen and defendants herein and other railroads entered into a stipulation postponing the effective date of the award until complete judicial review had been obtained. The agreement of the parties and not the law makes the result unequal. The same opportunity was open to plaintiff through 45 U.S.C.A. § 158(j), but it refused to enter into such an agreement as offered by defendants and others.

Lastly, plaintiff alleges that if defendants are permitted to operate their railroads under the local awards, hazardous conditions will prevail impairing the safety of employees represented by plaintiff and to the general public using the

**204**

streets and highways and further that employees represented by plaintiff will lose some seniority rights available to them under other contracts. We cannot entertain the question inasmuch as Congress designated Board 282 as the body to make that determination. Under Public Law 88–108, Section 7, the safety question and the interests of the employees and the carriers were required to be considered by Board 282 in making its award. On review, that award has been declared in conformity with the Congressional enactment, Brotherhood of Locomotive Firemen & Enginemen v. Chicago, B. & Q. R. Co., supra.

In arriving at our conclusion that we are without authority to grant the relief sought, we have also considered an order of May 11, 1964, entered by Judge Holtzoff in the United States District Court for the District of Columbia, 229 F.Supp. 259, styled Certain Carriers Represented by the Eastern, Western and Southeastern Carriers' Conference Committees, and Certain of Their Employees Represented by the Brotherhood of Locomotive Engineers, Brotherhood of Locomotive Firemen and Enginemen, Order of Railway Conductors and Brakemen, Brotherhood of Railroad Trainmen, and The Switchmen's Union of North America, which stemmed from the action of certain carrier parties in seeking injunctive relief from a threatened strike and the counter-action of certain railroad organizations seeking to condition such injunctive relief upon the carriers refraining from the implementation of disputed applications of the Award pending determination of those disputes by the Board. The third paragraph of Judge Holtzoff's order reads as follows:

"That this Court reserves jurisdiction for the purpose of enabling any of the parties to this proceeding, or any person that may be or may hereafter become bound in whole or in part by this order, to apply to this Court at any time for such further orders as may be necessary or appropriate for the construction, carrying out or enforcement of this order

or of the judgment heretofore entered in this proceeding upon the Award by Arbitration Board No. 282, or any legal obligation resulting therefrom."

This more than fortifies our view that we are without jurisdiction or authority to grant the relief sought. The cross-motions for summary judgment on the merits will be overruled. Defendants' motion to dismiss for lack of jurisdiction and for failure to state a claim on which we can grant relief will be sustained on the ground that this Court lacks jurisdiction. Since, in arriving at this decision, we have considered matters outside the pleadings, the dismissal will be with prejudice. The restraining order will be terminated.