NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0373n.06

No. 08-1876

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**May 26, 2009**
LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| SILVIA J. THOMAS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| CHANCEY P. MILLER, individually and in his | ) | |
| official capacity of General Manager of Elmwood | ) | |
| Cemetery; ELMWOOD CEMETERY, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE: DAUGHTREY, ROGERS, KETHLEDGE, Circuit Judges.

ROGERS, Circuit Judge. After being fired from defendant Elmwood Cemetery, plaintiff Silvia Thomas was dropped from her health insurance company's coverage. Thomas initially sued Elmwood and defendant Chancey Miller, her former supervisor at Elmwood, for failing to notify her of her right to continue health insurance under the Consolidated Omnibus Reconciliation Act of 1985 (COBRA), 29 U.S.C. § 1160 *et seq*. She alleged that although Elmwood was not covered by COBRA because it fell within the statute's small business exception, Elmwood was estopped from denying her COBRA benefits because it had previously offered them to another employee. The Sixth Circuit affirmed summary judgment on that claim, holding that Thomas failed to make out the elements of estoppel and, therefore, that Elmwood was not required to provide Thomas with COBRA benefits. Thomas then brought this action, asserting state law claims arising from her discharge and from her exposure to an unsafe workplace, and claiming that the defendants' actions

in failing to extend COBRA benefits to her constituted discrimination in violation of 42 U.S.C. § 1981. The district court dismissed the entirety of this action as barred by res judicata.

The Sixth Circuit's decision in the prior suit was a decision on the merits, and it bars relitigation of Thomas's claims arising out of her termination because they are part of the same cause of action as that suit. Thomas has not shown that the defendants acquiesced to her claim-splitting, and therefore there is no exception to the res judicata bar.

Thomas worked as a sales consultant at Elmwood from 1993 until she was fired on January 15, 2004. Miller was Thomas's general manager during this time period. The reason for Thomas's termination is disputed by the parties. Thomas alleges that she was fired because of racial or sexual discrimination, or alternatively in retaliation for informing Michigan authorities about her unsafe workplace.

Thomas alleges that the defendants subjected her to an unsafe workplace. According to Thomas, she was continually exposed to toxic mold, second-hand smoke from Miller's cigarettes, and lead paint at her office. Thomas alleges that her exposure caused her to have respiratory health problems. During her employment, Thomas was covered by health insurance provided by Elmwood. This health insurance was cancelled after Thomas was fired, although Thomas did not learn of the cancellation until two months after the fact. Thomas states that she is unable to pay for the health care costs associated with treating her respiratory condition because she no longer has insurance.

Thomas was not allowed to maintain her insurance under COBRA after her departure. COBRA amended the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, which does not apply to small businesses with less than twenty employees, 29 U.S.C

§ 1161(b). Elmwood had fewer than twenty employees during Thomas's employment. Despite this, Thomas alleged that Elmwood gave COBRA benefits to another employee, John Winn. She alleged that Elmwood did not extend the benefits to her because she is female and African-American, whereas Winn is male and Caucasian.

In April 23, 2004, Thomas initiated her first suit against Miller and Elmwood in Michigan state court. Thomas brought several state law claims and a claim that the defendants failed to notify her of her right to access COBRA benefits. The defendants removed the case to federal court. Opposed to a federal forum, Thomas filed a motion for remand to state court and, in the alternative, a motion to sever the state law claims. The defendants opposed Thomas's motion to sever, arguing that the district court had no grounds to decline to exercise supplemental jurisdiction over the state law claims. Unsuccessful on her motion, Thomas filed a motion to dismiss her COBRA claim. The district court granted Thomas's motion, dismissed the COBRA claim, and remanded the case to state court on July 30, 2004. *Thomas v. Miller*, No. 2:04-cv-71835 (E.D. Mich. Jul. 30, 2004) ("*Thomas I*"). Back in state court, the parties unsuccessfully submitted their case to arbitration, and the state court eventually dismissed the case without prejudice for want of progress on January 3, 2006.

On February 7, 2005, Thomas initiated her second suit against the defendants in the U.S. District Court for the Eastern District of Michigan. Thomas brought only a claim for an ERISA violation under 29 U.S.C. § 1132, alleging that defendants failed to meet their duty to notify her that she was eligible for COBRA benefits, as required by 29 U.S.C. § 1166(a)(2). Thomas averred facts relevant to the COBRA claim. She also noted that during her employment she was exposed to toxic mold and second-hand smoke and stated that her failure to be extended COBRA benefits made her

unable to pay medical bills arising from that exposure. The defendants moved for summary judgment on the ground that under 29 U.S.C. § 1161(b), COBRA did not apply to Elmwood because at no point during Thomas's employment did the company have more than twenty employees. Thomas acknowledged that Elmwood did not employ twenty or more people, but argued that Elmwood had voluntarily provided COBRA coverage to Winn and was equitably estopped from using § 1161(b) as a defense. The district court granted summary judgment on the grounds that Sixth Circuit precedent barred the use of estoppel to establish COBRA's statutory threshold, which was considered, at the time, an issue of subject matter jurisdiction. *Thomas v. Miller*, No. 2:05-cv-70473, 2005 WL 2173714 (E.D. Mich. Sept. 7, 2005) (*"Thomas II"*); *see also, e.g.*, *Douglas v. E.G. Baldwin & Assocs., Inc.*, 150 F.3d 604, 607 (6th Cir. 1998).

On appeal, we affirmed the dismissal of *Thomas II* on other grounds, observing that we "previously ha[s] refused to apply the [estoppel] doctrine when the issue was whether that party satisfied a statute's numerical threshold" because "numerical-threshold requirements were jurisdictional matters" and parties cannot waive lack of federal jurisdiction. *Thomas v. Miller*, 489 F.3d 293, 297-98 (6th Cir. 2007). We also noted, however, that *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006), "effectively overruled" the cases stating that numerical thresholds were jurisdictional issues. *Id.* at 298. As a result, we held that the numerical threshold was an element of Thomas's claim and considered whether equitable estoppel could satisfy that element. *Id.* at 302-03. Upon finding that Thomas did not satisfy the elements of estoppel, we affirmed the decision of the district court. *Id.* at 303.

On November 30, 2006, Thomas initiated her third suit against the defendants, again in Michigan state court. This suit asserted state law claims arising out of her termination and exposure to an unsafe workplace, several of which had been included in *Thomas I*, including: (1) violation of the Elliott-Larson Civil Rights Act of Michigan; (2) intentional tort; (3) wrongful discharge; (4) intentional infliction of emotional distress; (5) violation of duty to provide safe workplace; (6) negligence; (7) reckless or willful and wanton conduct; (8) violation of the Michigan Whistle Blower's Protection Act; and (9) "false lights." On March 26, 2007, Thomas amended her complaint to bring an equal rights claim under 42 U.S.C. § 1981, alleging that the defendants discriminated against her when they failed to offer her COBRA benefits on the same basis as offered to Winn. Thomas alleged that the defendants' actions interfered with her right to contract under COBRA, in violation of § 1981(a).

On April 20, 2007, the defendants removed this suit to U.S. District Court for the Eastern District of Michigan and moved to dismiss under Fed. R. Civ. P. 12(b) on the ground that it was barred by the res judicata effect of *Thomas II*. The district court at first found that res judicata did not bar Thomas's claims, but dismissed Thomas's state law claims for wrongful discharge, violation of employer's duty to provide a safe workplace, and violation of Michigan Whistle Blower's Protection Act on independent state law grounds. However, upon the defendants' motion for reconsideration regarding the res judicata issue, the district court found that the decision in *Thomas II* barred Thomas's federal claim and dismissed the suit in its entirety. Thomas now appeals the district court's decision.

Thomas argues on appeal that her § 1981 COBRA claim is not precluded because the "two COBRA claims [from *Thomas II* and the instant case] do not involve the same cause of action." Appellant Br. at 7. Thomas's brief does not challenge the district court's determination that her state law claims are also precluded. We conclude that the decision in *Thomas II* bars Thomas's § 1981 COBRA claim. The two claims involve the same cause of action because a common identity of facts exists between the § 1981 COBRA claim and the COBRA claim in *Thomas II*, and they are a convenient unit for trial.

The federal law[1] doctrine of res judicata, or claim preclusion, bars Thomas's § 1981 COBRA claim because the decision in *Thomas II* is a "final judgment on the merits [that] bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153 (1979). Our decision in *Thomas II* was a final judgment on the merits rendered by a court of competent jurisdiction, under *King*, 790 F.2d at 529. Although the district court held in that case that it lacked subject matter jurisdiction, we held on appellate review that under *Arbaugh* there was subject matter jurisdiction. *Thomas*, 489 F.3d at 298. We reviewed the merits of Thomas's claim, holding that Thomas had conceded that Elmwood had fewer than twenty employees and that she could not make out the elements of estoppel. *Id.* at 296, 302-03. We held, therefore, that Elmwood was not covered by COBRA and Thomas failed to show she was entitled her to relief. *Id.* at 303. Our affirmance of summary judgment on this ground was a decision on the merits.

_____

[1] When exercising federal question jurisdiction, this court applies federal law to determine the preclusive effect of prior decisions by federal courts. *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 324 n.12 (1971); *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 462 (6th Cir. 1999).

The decision in *Thomas II* bars Thomas's § 1981 COBRA claim because the two suits involve the "same cause of action" between the same parties, as required by *King*, 790 F.2d at 529. The term "same cause of action" can encompass claims, such as Thomas's § 1981 COBRA claim, that "were previously available to the parties, regardless of whether they were asserted or determined in the first proceeding." *Brown v. Felsen*, 442 U.S. 127, 131 (1979). These claims are part of the "same cause of action" and are, therefore, barred because there is a common "identity of the facts creating the right of action and of the evidence necessary to sustain each action." *Westwood Chemical Co., Inc. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981). In *Thomas II*, Thomas argued that when she was fired, the defendants neglected their duty to inform her of her COBRA rights within thirty days. To bolster her claim, Thomas argued that although defendants fell outside ERISA's numerical threshold, defendants were equitably estopped from arguing that COBRA did not govern their actions because they had extended COBRA benefits to Winn. In her § 1981 COBRA claim in this suit, Thomas argues that the defendants discriminated against her by not extending COBRA's benefits to her on the same ground that they extended it to Winn. Both suits involve proving what benefits were extended to Winn and whether Thomas was entitled to the same treatment. Thus, Thomas relied on the same facts in attempting to get relief in *Thomas II*. But, Thomas must "assert all [her] various legal theories and factually related allegations the first time [s]he brings suit." *Kale v. Combined Ins. Co.*, 924 F.2d 1161, 1166 (1st Cir. 1991) (citation omitted).

Thomas pled discrimination in her prior suit and cannot use a "new theory" to "revive" that suit. *See Roach v. Teamsters Local Union No. 688*, 595 F.2d 446 (8th Cir. 1979). In *Roach*, the

plaintiffs initially brought suit against their union for loss of benefits. *Id.* at 447. After that suit was concluded, plaintiffs brought a second suit, alleging that the union refused to allow them to participate in union meetings. *Id.* The Eighth Circuit found, however, that the plaintiffs had argued that they were excluded from the meeting as part of the basis of their first suit and, therefore, dismissed their second action as an "attempt to relitigate the same claim under a different theory of recovery." *Id.* at 448. Similarly, in this case, Thomas brings this suit under a different federal statute, but she used the defendants' alleged discrimination to argue the merits of her *Thomas II* claim. She cannot have a second bite at the apple.

The policies behind res judicata are furthered by dismissing the § 1981 COBRA claim as part of the "same cause of action" as that brought in *Thomas II*. Applying res judicata to Thomas's claim "conserve[s] judicial resources," *Allen v. McCurry*, 449 U.S. 90, 94 (1980), because the § 1981 COBRA claim and the *Thomas II* claim "form a convenient trial unit." Restatement (Second) Judgments § 24 (1982). We note, for example, that the § 1981 COBRA claim requires similar evidence and witnesses as would have been needed for Thomas to make her COBRA claim in *Thomas II*. The parties here have been through three lawsuits spanning almost five years before the Michigan state courts, the federal district court, and the court of appeals. In *Thomas I*, the district court did not grant Thomas's request to split her claims and Thomas, therefore, dismissed her COBRA claim to get her state claims back into state court. Thomas filed *Thomas II* while her state claims from *Thomas I* were still pending in state court. Thomas's filing of the COBRA claim in federal court is an attempt to avoid the district court's ruling and pursue these claims in different

venues. Res judicata prevents Thomas from bringing the § 1981 COBRA claim, which "should have been litigated in the prior action," as stated in *Golden*, 548 F.3d at 495.

Contrary to Thomas's argument, the application of res judicata is not excused in this case because of an acquiesced splitting of claims. The Restatement (Second) of Judgments § 26(1) states that where "[t]he parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein," res judicata does not preclude a subsequent suit on the same cause of action. Even if this court recognized § 26(1) as an exception to res judicata under federal common law, Thomas's counsel conceded at oral argument that the defendants did not acquiesce in the splitting of Thomas's claims. But even without that concession, the record in *Thomas I* indicates that the defendants filed a motion to oppose Thomas's attempt to split her claims. Faced with opposition, Thomas voluntarily dismissed her federal claim and pursued her state claims in Michigan state court. Thomas's later decision to refile the federal claim and pursue it separately (*Thomas II*) carries with it preclusive consequences.

The judgment of the district court is affirmed.